IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE PROPERTY AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 2:07 CV 809-MHT |
| LEO LACAYO and M.F., a minor, by and through her Parent and Next Friend, Vicki Flowers, | ) ) ) ) | |
| Defendants. | ) | |

## RESPONSE OF FLOWERS' DEFENDANTS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW M.F., a minor, by and through her Parent and Next Friend, Vicki Flowers [hereinafter "Defendants" or "Flowers' Defendants"] and responds to Plaintiff Nationwide's Motion for Summary Judgment (Feb. 22, 2008). Based upon the record and the following, Plaintiff's motion is due to be denied.

**I.    NO PART OF THE APPLICABLE INSURANCE POLICY RELIEVES PLAINTIFF NATIONWIDE OF THE DUTY TO DEFEND AND INDEMNIFY FOR THE FLOWERS' DEFENDANTS' CLAIMS.**

Plaintiff relies on one ambiguous policy exclusion to erroneously assert that it has no duty to defend or indemnify its insured for the damage inflicted on the Flowers' Defendants. But the entire policy is properly read to favor coverage, and the ambiguous policy exclusion is insufficient to defeat coverage.

**A.    The Policy Specifies that Neither First Aid Expenses nor Property Damages are Subject to the Exclusion Cited by Nationwide.**

The policy states, under the oversized, bold and italicized heading entitled "***Additional Liability Coverages***," that certain "additional coverages are not subject to the Section II Liability Exclusions" upon which Nationwide relies.  Pltf's Exhibit 1 (Doc. # 28), Homeowner's Policy, ***Additional Liability Coverages*** at G2.  "First Aid Expenses" constitutes a category of one such additional coverage not subject to exclusion.  The policy reads: "We will pay expenses for first aid to others incurred by an insured fo bodily injury covered under this policy.  We will not pay fo first aid to you or any other insured."  *Id.,* Policy, ***Additional Liability Coverages*** at G2, ¶2.  Thus, all the first aid expenses incurred by the Flowers' Defendants, even to the extent such expenses occurred at a hospital and/or at a pharmacy, are covered and not excluded by the policy.  The Flowers' Defendants had medical and medication expenses in the nature of first aid.  *See* Def. Exhibit 1, Flowers Decl. at 1-2, ¶ 3-4, and attachments.

Similarly, "Damage to Property of Others" constitutes another category of one such additional coverage not subject to exclusion.  The policy reads: "We will pay for property damage to property of others caused by an insured regardless of legal liability."  Policy, ***Additional Liability Coverages*** at G2, ¶3.  There are no applicable exclusions, and thus the property damage incurred by the Flowers' Defendants - including ripped and ruined clothing - is covered.  *See* Def. Exhibit 1, Flowers Decl. at 2, ¶ 5 (identifying damage to M.F.'s shirt and bicycle).

**B.     The Exclusion Nationwide Cites Excludes, if Anything, no More Than "Medical Payments to Others."**

**1.     Ambiguities in Nationwide's Policy Defeat Nationwide's Effort to Satisfy its Burden of Proof on Summary Judgment.**

Even if one assumes that the exclusion cited by Nationwide applies to the Flowers' claims, by its express terms the exclusion applies only to "[m]edical [p]ayments to [o]thers."  Plaintiff's Exhibit 1 (Doc. # 28), Nationwide Homeowner's Policy, Section II - Liability Exclusions at H1, ¶ 1 ("Medical Payments to Others do not apply to bodily injury or property damage: ... o) caused by any of the following animals owned by or in the care of an insured").   By its express terms, the sole exclusion upon which Nationwide relies does not apply to claims for pain and suffering, permanent scarring, physical and mental suffering, trauma, psychological distress and damage, discomfort, inconvenience, physical injury, consortium, or any other manner of compensatory or punitive damage.  The only species of damage that the terms of the Exclusion arguably purport to exclude are "medical payments to others."  Because the Flowers' have claims for far more than mere "medical payments," Nationwide cannot rely on this ambiguous provision to defeat its clear duty to defend and indemnify.  Its motion for summary judgment must be denied.

Under Alabama law, the insurer bears the burden of proving the applicability of any policy exclusion.  *Allstate Indem. Insur. v. Lewis*, 985 F. Supp. 1341, 1345 (M.D. Ala. 1997).  If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Id.* (*citing Altiere v. Blue Cross & Blue Shield*, 551 So. 2d 290, 292 (Ala. 1989)).  Given

the degree of ambiguity plaguing the policy, as explained throughout this Response, Plaintiff's plea for a favorable summary judgment cannot be sustained.

**2.    The Section II "Liability Exclusions," Even if Applicable to More Than Medical Payments, Do Not Exclude Emotional Distress, Psychological Injury, or Punitive Damages.**

The "Liability Exclusions" of Section II purport to exclude only "bodily injury or property damage."  Plaintiff's Exhibit 1 (Doc. # 28), Nationwide Homeowner's Policy, Section II - Liability Exclusions at H1, ¶ 1 ("Medical Payments to Others do not apply to bodily injury or property damage").  The term "bodily injury" is arguably defined in Section II's "Liability Coverages" as "bodily harm" such that bodily injury "does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm."  *Id.* at Section II - Liability Coverages at G1, ¶ 1.  Therefore, the emotional distress, mental anguish, fear, and upset M.F. suffered prior to the dog's physically touching her, (*see* Def's. Ex. 2 at 1, ¶ 2), would not satisfy the policy's definition of "bodily injury."  Therefore, these emotional and psychological injuries, as well as punitive damages, are not excluded by Section II's "Liability Exclusions."

Moreover, these damages would be covered under Section II's "Coverage Agreements."  Plaintiff's Exhibit 1 (Doc. # 28), Nationwide Homeowner's Policy, Section II - Liability Exclusions at G1.  In fact, the "Personal Liability" coverage is expansively written to cover all "damages" an insured is "legally obligated to pay" from an accident.  This provision specifically provides: "We will pay damages an insured is legally obligated to pay due to an occurrence [i.e. bodily harm resulting from an

accident] resulting from negligent personal acts or negligence arising out of the

ownership, maintenance, or use of real or personal property." *Id.*, Section II - "Coverage

Agreements" at G1. All forms of emotional distress damages incurred prior to physical

contact with the dog, along with punitive damages, constitute "damages an insured is

legally obligated to pay" although in and of themselves they may not satisfy the policy's

definition of bodily injury. Nonetheless, these emotional and punitive damages are

inextricably intertwined with the bodily harm that in fact occurred. As such, while

Nationwide would arguably not be liable for such damages had there been no physical

contact with the dog or no physical injury, the fact that there was a physical injury meant

that Nationwide's policy covered all "damages" that Defendant Lacayo is "legally

obligated to pay," even if such damages would not otherwise be covered. This is true in

part because the pre-contact emotional damages and the punitive damages exist

independent of any bodily injury or other form of compensatory damage.

  The language indicating an expansive coverage of all "damages" an insured

is "legally obligated to pay," (*see id.*, Section II - "Coverage Agreements" at G1), along

with other provisions in the policy, (*see also id.* at G2), creates the reasonable

expectation that coverage will attach. As the Alabama Supreme Court has noted with

approval, "[W]here an expectation ... is in conflict with a limiting clause in the policy,

the resulting ambiguity must be resolved in favor of the insured due to the nature of

insurance contracts." *Federated Mutual Insur. Co. v. Abston Petroleum, Inc.*, 967 So. 2d

705, 714 (Ala. 2007) (citations omitted). The fact that a Nationwide agent expected and

represented that the policy would provide coverage in this instance to Mr. Lacayo,

(Lacayo "Response to Complaint," (Doc. #16 at 1)), testifies to the reasonableness of the

expectation of coverage.  As revealed herein and throughout the policy, the reasonable
expectation that coverage is provided should overcome Plaintiff's motion for summary
judgment.

> **C.      The Ambiguous Exclusion Nationwide Cites does not Preclude
> Coverage of the Flowers' Defendants' Claims.**

Any ambiguity in the Nationwide policy must be construed strictly to favor
coverage, and all reasonable inferences must be drawn in favor of coverage on this
motion for summary judgment.  The language of the policy is ambiguous, self-
contradictory, frequently undefined, and fatally flawed.  Multiple provisions of the policy
reveal that the Exclusion relied upon by Nationwide cannot defeat coverage.

> **1.      Section I's Property Exclusions are Materially Broader than Section
> II's Liability Exclusions.**

The "Property Exclusions" embodied by Section I employs language materially
and significantly broader than the language employed by the "Liability Exclusions"
embodied by Section II.  The Property Exclusions Section begins, "1.      We do not
cover loss to any property *resulting directly or indirectly from* any of the following.
Such a loss is excluded *even if another cause or event contributed concurrently or in any
sequence to cause the loss.*"  Policy, Property Exclusions, Section II at D1, ¶ 1.  By
contrast, the "Liability Exclusions" animal provision upon which Nationwide relies
contains no language referring to injury or damage "*resulting directly or indirectly*" from
any occurrence; no language referring to an injury or damage caused "*directly or
indirectly*" by any occurrence; no language referring to "*another cause or event
contribut[ing] concurrently or in any sequence*;" and no language suggesting that
multiple causes would trigger the exclusion.  Indeed, the spartan language of

subparagraph "(o)" [hereinafter "the animal exclusion"], points unmistakably to the conclusion that the only bodily injuries even arguably excluded are those caused *solely and exclusively and directly* by the list of specified animals. The animal exclusion is inapplicable to situations, such as exist here, susceptible to multiple or concurrent or superseding causes. In other words, if there is more than one cause of the injury, the relied upon exclusion does not apply.

This Circuit has recently relied upon Alabama Supreme Court precedent to note that in determining whether a term is ambiguous, "an isolated sentence of the policy should not be construed alone, but in connection with other provisions of the said policy in order to arrive at a [proper] construction." *Mega Life and Health Ins. Co. v. Pieniozek*, 516 F.3d 985 (11th Cir. 2008). Taking this comparative approach demonstrates that coverage is required.

Further evidence that the animal exclusion is not triggered unless the animal is the sole cause of the injury is revealed in the language employed by the other subdivisions of Section II. In the fifteen listed categories of injury excluded from coverage, (*see* subparagraphs "a" - "o"), only subparagraph "l" refers to an injury that even arguably parallels Section I's "*resulting directly or indirectly from*" language. Subparagraph "l" provides an exclusion for injuries "resulting from acts or omissions relating directly or indirectly to" sexual abuse. Policy, Liability Exclusions, Section II at H3, ¶ 1(l). Since Nationwide chose not to use this or similar language in the animal exclusion subparagraph, the policy does not exclude injuries caused indirectly or that have more than one cause or that are caused by omission. In the present case, the injuries had more

than one cause, were caused in part by omission, and were caused indirectly (at least in part). The dog was not the sole, independent, direct cause of injury.

Nearly all of the fifteen listed categories of exclusion featured in Section II, paragraph 1, employ language materially broader than or different from that employed by the animal exclusion of subparagraph (o). *See* Policy, Liability Exclusions, Section II at H1-H3; *id.* at ¶1(b) (excluding injury "caused by or resulting from an act or omission" which is criminal); *id.* at ¶1(c) (excluding injury "arising out of" business pursuits); *id.* at ¶1(d) (excluding injury "arising out of"); *id.* at ¶1(e) (excluding injury "arising out of"); *id.* at ¶1(f) (excluding injury "arising out of" and limiting the exclusion with similar language); *id.* at H1-H2, ¶1(g) (excluding injury "arising out of" or "related to the use of", and limiting the exclusion by use of "arising out of and in the course of employment" language, *id.* at H2 ); *id.* at H2, ¶1(i) (excluding injury "resulting from" transmitting a communicable disease);  *id.* at H2, ¶1(j) (excluding injury "arising from"); *id.* at H2-H3, ¶1(k) (excluding injury "arising out of" and limiting the exclusion with identical language); *id.* at H3, ¶1(l) (excluding injury "resulting from acts or omissions relating directly or indirectly to" sexual abuse); *id.* at H3, ¶1(m) (excluding injury "resulting from" drugs); *see also id.* at H4, ¶ 3(a)(limiting an exclusion that "arises out of"), and at H4, ¶ 3(b)(excluding injury "from" one of three nuclear events "or a consequence of any of these").

By contrast, the animal exclusion provision uses the restrictive term "caused by", which is additionally limited by the modifier "causing."  *Id.* at H3, ¶ (o)(5)(a).  The terms Nationwide chose to use in other "Liability Exclusions" subparagraphs but not to use in the animal exclusion provision reveal the narrowness of the animal exclusion.  Terms

such as "arising out of," "resulting from," "resulting from acts or omissions relating directly or indirectly to," or simply "from," all suggest contemplation of more than one cause as a potential trigger.  In context of Nationwide's "Liability Exclusions", use of the term "caused by" contemplates as the exclusion trigger one solitary direct cause, but not "a consequence of any" number of causes, *id.* at H4, ¶ 3(b), and not a cause by "omission."

As noted, the dog was not the sole, independent, direct cause of injury.  The dog acted in concert with the owner who failed to properly restrain and secure the dog on the premises.  DEX 1 at ¶2 & DEX 2.  As the police report notes, the dog escaped from the yard and was not  properly tied to a stake and not restrained in the yard.  DEX 2. According to Mr. Lacayo, the dog was "provoked," (*see* Lacayo "Response to Complaint," (Doc. #16 at 1)), meaning that, if his story is believed, the provocation provided an additional, perhaps concurrent, cause to the injury.  To the extent that the dog escaped because of a negligent omission - namely the failure to retrain the dog in the yard - such an omission is not a "cause" that triggers subparagraph (o)'s exclusion. Clearly, the activities and omissions of the members of the Lacayo family as well as the conduct of the animal constitute multiple, concurrent causes of actual injuries that are not subject to exclusion.

## II.    NATIONWIDE HAS ADMITTED FOR PURPOSES OF SUMMARY JUDGMENT THAT COVERAGE IS REQUIRED.

Mr. Lacayo has replied in his Answer that after the dog attack, Nationwide informed him that his policy covered the incident.  Lacayo "Response to Complaint,"

(Doc. #16 at 1).  Mr. Lacayo states that "after reporting this incident to my agent, he assured me that I was fully covered and no worries in this situation."  *Id.*  Such an admission not only serves to demonstrate the ambiguity of the policy, but precludes the entry of summary judgment by serving as an admission that the policy in fact does provide coverage and indemnity to Mr. Lacayo related to dog's attack.

### CONCLUSION

Based on the above and on the record, the Plaintiff's motion for summary judgment is due to be denied in its entirety.

Respectfully submitted this the  28th  day of March, 2008.

/s/ M. Wayne Sabel
M. Wayne Sabel (SAB 002)


/s/ Mark Sabel
Mark Sabel (SAB 004)
Attorneys for Defendant

**OF COUNSEL:**

**SABEL & SABEL, P.C.**
Hillwood Office Center
2800 Zelda Road, Ste. 100-5
Montgomery, Alabama 36106
Telephone:     (334) 271-2770
Facsimile:     (334) 277-2882

**CERTIFICATE OF SERVICE**


I hereby certify that I have served a copy of the foregoing upon the following counsel of record by the Federal Electronic System and by placing a copy of same in the United States Mail, postage prepaid and properly addressed to Defendant Lacayo, this 28th day of March, 2008:

Kori L. Clement, Esq.
Attorney for Plaintiff, Nationwide Property
   And Casualty Company
HARE, CLEMENT & DUCK, P.C.
505 20th Street North
Suite 1010, Financial Center
Birmingham, Alabama 35203
clem@harelaw.com


Leo Lacayo
3106 Brentwood Drive
Montgomery, Alabama 36111


                              /s/ M. Wayne Sabel
                              M. Wayne Sabel

# Flowers Defendants' Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE PROPERTY AND<br>CASUALTY COMPANY, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Civil Action No.:<br>2:07 CV 809-MHT |
| LEO LACAYO and<br>M.F., a minor, by and through her<br>Parent and Next Friend, Vicki Flowers, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## DECLARATION OF DEFENDANT VICKI FLOWERS

COMES NOW Vicki Flowers and subject to the penalty of perjury makes this declaration based on my personal knowledge:

1. I am over 21years old and am the mother of M.F., a minor.

2. The dog who attacked and injured my daughter was not kept in a fenced yard. The barking dog caused fear and emotional distress in my daughter even before the dog bit or touched her, as well as both during and after the attack. My daughter was filled with fear and riding away, but the dog caught her from behind. She has since suffered emotional distress from the incident.

3. After my daughter was attacked, she was taken the same day to the emergency room to receive medical treatment in the nature of First Aid. My daughter had cuts, scrapes, bruises, and puncture wounds from dog bites, and the hospital

administered the necessary First Aid, including by prescribing Tylenol for pain

and medicine to prevent infection. Among other things, my daughter's wounds

were cleaned, she was administered Neosporin, and gauze was applied. My

daughter returned to the emergency room for follow up, where she received

additional treatment, including in the nature of First Aid.

4.   The attached medical documents obtained from Baptist Health are some of the

records obtained and reflect a portion of the aid my daughter received.

5.   The attack resulted in my daughter's shirt being ripped and ruined; I threw it away

shortly after the incident. There is some damage to the pedal of M.F.'s bicycle,

which may have resulted from the dog's attack.

I declare the above to be true to the best of my knowledge under the penalty of perjury.


VICKI FLOWERS

DATE: 3-28-08



FLOWERS,MAKAYLA B
B0710400215
DOB: 10/19/98    Age:8Y    MR #:415967
                            1347P
Admit Date/Time: 04/14/07              F
911 MOOREHOUSE,JOHN D

Patient Information

**Baptist** HEALTH

# EMERGENCY
# DEPARTMENT
# NURSING NOTES

| DATE | TIME | NOTES |
|------|------|-------|
| 4/14/07 | 1630 | Wounds on right upper arm and (who left knee cleaned c̄ H₂O₂ as ordered. Neosporin and 4x4 gauze then wrapped w/ dry dsg. Wounds on back (scratches) cleaned c̄ hydrogen peroxide also — neosporin applied per Dr. Moorehouse. Tol. well. Dsch e wound care instructions to mother. c̄ no refer c̄ 3 mg. ___ MM |
|  |  |  |

| Initial | Signature |
|---------|-----------|
| MM | M Leatherwood |
|  |  |
|  |  |
|  |  |

ER 160



B0710200806    FLOWERS,MAKAYLA B
DOB: 10/19/98    Age:8Y    MR #:415967
Admit Date/Time: 04/12/07    1908P
920 ALEXANDER,D GREGORY    F



Procedure Page

Page 1

Patient Name: _____

## Wound Repair

| Site 1 | | Size (in cm.) | | Site 2 | | Size (in cm.) | | Site 3 | | Size (in cm.) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| O | Scalp | ⑥ . ⑥ | | O | Scalp | ⑥ . ⑥ | | O | Scalp | ⑥ . ⑥ | O Local Anesthesia |
| O | Neck | ① . ① | | O | Neck | ① . ① | | O | Neck | ① . ① | O Digital Block for |
| O | Axillae | ② . ② | | O | Axillae | ② . ② | | O | Axillae | ② . ② | repair |
| O | Genitalia | ③ . ③ | | O | Genitalia | ③ . ③ | | O | Genitalia | ③ . ③ | **Material:** |
| O | Chest | ④ . ④ | | O | Chest | ④ . ④ | | O | Chest | ④ . ④ | Sutures |
| O | Back | ⑤ . ⑤ | | O | Back | ⑤ . ⑤ | | O | Back | ⑤ . ⑤ | Staples |
| O | Arm | ⑥ . ⑥ | | O | Arm | ⑥ . ⑥ | | O | Arm | ⑥ . ⑥ | Dermabond |
| O | Hand | ⑦ . ⑦ | | O | Hand | ⑦ . ⑦ | | O | Hand | ⑦ . ⑦ | O Steri Strips to: |
| O | Finger | ⑧ . ⑧ | | O | Finger | ⑧ . ⑧ | | O | Finger | ⑧ . ⑧ | |
| O | Face | ⑨ . ⑨ | | O | Face | ⑨ . ⑨ | | O | Face | ⑨ . ⑨ | |
| O | Ear | | | O | Ear | | | O | Ear | | **Cleansing:** |
| O | Eyelid | O ≥ 10 cm ___ | | O | Eyelid | O ≥ 10 cm ___ | | O | Eyelid | O ≥ 10 cm ___ | **Dressing:** |

| | | Complexity | | | | Complexity | | | | Complexity | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| O | Nose | | | O | Nose | | | O | Nose | | **Dehiscence wound:** |
| O | Lip | O Simple | | O | Lip | O Simple | | O | Lip | O Simple | O Simple closure |
| O | Mouth | O Layered | | O | Mouth | O Layered | | O | Mouth | O Layered | O Packing |
| O | Leg | O Complex | | O | Leg | O Complex | | O | Leg | O Complex | |
| O | Foot | **Location** | | O | Foot | **Location** | | O | Foot | **Location** | |
| O | Toe | R  L  N/A | | O | Toe | R  L  N/A | | O | Toe | R  L  N/A | O Additional Wounds |

| Incision | | FB Removal | | | Simple / SC | Deep | I & D / Abscess / Cysts Site | Simple | Complex | Miscellaneous Nails |
|---|---|---|---|---|---|---|---|---|---|---|
| Yes | No | | | | | | | | | |
| O | O | Foot | | | O | O | Finger | O | O | O Drain subungual hematoma |
| O | O | Thigh / Knee | | | O | O | Pilonidal cyst | O | O | O Excise ingrown toenail |
| O | O | Forearm / Wrist | | | O | O | Soft tissue/skin | O | O | O Wedge resection toenail |
| O | O | Elbow / Upper Arm | | | O | O | Ear | O | O | O Avulsion of nail plate |
| O | O | Shoulder | | | O | N/A | Nasal | O | O | O Repair of nail bed |
| O | O | Muscle – other | | | O | O | Tooth | O | O | |
| O | O | Skin/Subcutaneous-other | | | O | O | Mouth | O | O | **Inject or Aspirate Joints** |

### FB removal No incision required

| | | | | | Peritonsillar | | | O Ganglion cyst |
|---|---|---|---|---|---|---|---|---|

| O Mouth | O Ear | O Pharynx | O Laryngoscopy | Bartholin cyst | | | O Small   Fingers   Toes |
|---|---|---|---|---|---|---|---|
| O Nose | O Vagina | O Rectum/Flex | O Rectum/Rigid | Hemorrhoid | | | O Medium  Wrist  Elbow  Ankle |

### Blocks (For Pain Only)

Rectum                A/C joint   Olecranon bursa

O Digital block for pain (not lacerations)    Scrotum          O Large  Shoulder  Hip  Knee
O TMJ joint                       Leg / Ankle    O          Subacromial bursa
O Dental pain
O Tendon
O Muscle

O Additional Procedure(s)

PRINTED BY: C236342          DATE: 8/15/2007
Form ER 16002  Rev. 01/25/06                              PP01

## Orthopedics

| Site | R | L | Strap | Pre-Form Splint | Custom Splint | Cast | Reduction Fracture | Reduction Dislocation | Notes |
|---|---|---|---|---|---|---|---|---|---|
| Finger - Metacarpal | O | O | O | O | O | N/A | O | O | Digit ① ② ③ ④ ⑤ |
| Toe - Phalanges | O | O | O | N/A | N/A | N/A | O | O | Digit ① ② ③ ④ ⑤ |
| Hand | O | O | N/A | O | O | O | O | O | **Minor Ortho** |
| Wrist | O | O | N/A | O | O | O | O | O | O  Ice therapy / elevation |
| Forearm | O | O | N/A | O | O | O | O | N/A | O  Sling      R    L |
| Elbow | O | O | N/A | N/A | O | O | O | O | O  Ace   2"  3"  4"  6" |
| Humerous | O | O | N/A | N/A | O | O | O | N/A | Site: _____ |
| Shoulder | O | O | O | O | O | O | O | O | O  Ortho shoe      R    L |
| Clavicle | O | O | O | N/A | N/A | N/A | O | O | O  Crutch / Walker  training |
| Nursemaid Elbow | O | O | N/A | N/A | O | N/A | N/A | O | w / return demonstration |
| Foot | O | O | N/A | O | O | O | O | N/A | O  Cervical Collar |
| Ankle | O | O | N/A | O | O | O | O | O | O  Reduce nasal fracture |
| Tib/Fib | O | O | N/A | O | O | O | O | O | O  Reduce nasal fracture and splint or pack |
| Knee | O | O | N/A | O | O | O | O | O | O  Reduce mandible |
| Femur | O | O | N/A | N/A | O | O | O | N/A | *Note:   Pre-formed splints include ankle splints, knee immobilizers and velcro wrist splints* |
| Hip | O | O | N/A | N/A | N/A | N/A | N/A | O | |

O  Bivalve cast  short arm        O  Bivalve Long Arm        O  Window cast        O  Ring Removal
O  Remove cast  short arm        O  Bivalve Leg                 O  Wedge cast
O  Add walker to existing cast   O  Traction                                       O  Additional Orthopedics Not Listed

| **Wound Care** | **Follow Up Wound Care / Suture Removal** |
|---|---|
| Wound cleansing        ☒ Simple     O Complex | O  Simple removal   O Complex removal   O Recheck |
| Dressing(s)        ☒ Small     O Medium     O Large | O  Sutures placed at another facility |
| Burn Care        O  Initial treatment first degree burn, local tx only | Notes:            SUTURES            STAPLES |
| 2nd or 3rd degree: O  Small <4.5%   O Medium 4.5-9%   O Large >9% | |

**NOTES**

Wound cleansed c̄ Swiclens & NS. Siri Strips to
wound on ht upper arm & heft thigh.

O  Additional Procedures Not Listed on Chart

| SIGNATURE | INITIALS | EMP ID | PHYSICIAN SIGNATURE | INITIALS |
|---|---|---|---|---|
| *[signature]* PRINTED BY: 286342 | | DATE 8/ | Authenticated by B. GREGORY ALEXANDER, MD On 4/30/07 3:22:41 AM | |

04/20/07

MAKAYLA B FLOWERS
0710400215
001        E/R    16        F1

04/14/07   04/14/07

VICKI M FLOWERS
3527 EDGEFIELD RD
MONTGOMERY              AL 36111

| 04/14 | 1 | 1502 | *** 450 EMERGENCY ROOM<br>FT-E/R LEVEL III VISIT<br>TOTAL EMERGENCY ROOM | 291.00 | 291.00<br>291.00 |

TOTAL CHARGES                                   291.00

TOTAL PAYMENTS/ADJUSTMENTS                        0.00

****THIS IS NOT A BILL****
WE HAVE SUBMITTED A CLAIM TO YOUR INSURANCE CARRIER FOR THE DATE OF
SERVICE SHOWN ABOVE. WE APPRECIATE THE OPPORTUNITY TO SERVE YOUR
HEALTHCARE NEEDS. PLEASE KEEP THIS SUMMARY OF TOTAL CHARGES FOR YOUR
RECORDS. THIS COPY IS NOT INTENDED FOR THE PURPOSE OF FILING INSURANCE.

BALANCE DUE                                     291.00

# Flowers Defendants' Exhibit 2

MONTGOMERY POLICE DEPARTMENT
ANIMAL CONTROL BITE REPORT

DATE OF REPORT _4-13-07_   TIME OF REPORT _0840_

**V I C T I M**

NAME _McKayla Flowers_   DOB _10-19-99_   AGE _7_   SEX _Fe_
Grandmother Guardian
PARENT(if minor) _Barbara Flowers_   EMPLOYER _N/A_

ADDRESS _3527 Edgefield rd Montg, Al 36111_   _Cell_

HOME PHONE _284-0439_   DAY/OFFICE PHONE _N/A_   _315-6597_

RELATED TO OWNER {✓}NO   { }YES   RELATIONSHIP:

**E X P O S U R E**

DATE OF EXPOSURE _4-12-07_   TIME OF EXPOSURE _1730_

ADDRESS EXPOSED _3100 Block of Brentwood dr Montg, Al_

TYPE OF EXPOSURE {✓}BITE   { }SCRATCH   { }OTHER____

PART OF BODY EXPOSED _Right upper arm Both shoulders + left leg_

CONFIRMED BY PHYSICIAN? { }NO   {✓}YES   DATE _4-12-07_

PHYSICIAN _Baptist South ER_   PHONE _288-2100_

**A N I M A L**

{✓}DOG   { }CAT   { }OTHER____   COLOR _Fawn/Blk Mask_   BREED _Bull Mastiff_
SIZE { }SMALL   { }MEDIUM   {✓}LARGE

{✓}PET   { }STRAY   { }WILD   DESCRIPTION _M 85 lbs "Moses" the Animal_

VACCINATED? { }NO   {✓}YES   { }UNKNOWN   DATE _3/6/07_   VET _Clinic·Dr Drake_

CIRCUMSTANCES LEADING TO EXPOSURE _McKayla stated in the_
_presence of her Grandmother Barbara Flowers_

ANIMAL KNOWN TO BITE OTHERS? { }NO   {✓}YES   { }PROVOKED {✓}UNPROVOKED

ANIMAL ACTING STRANGELY? {✓}NO   { }YES   DESCRIBE____

**O W N E R**

NAME _Leo Lacayo III_   EMPLOYER _Pepsi Company_

ADDRESS _3106 Brentwood dr Montgomery Al 36111_

HOME PHONE _288-9435_   DAY/OFFICE PHONE _868·4939 cell_

OFFICER COMPLETING ABOVE INFORMATION _AM Dorman 630_

SIGNATURE OF COMPLAINANT _Barbara Flowers_
I hereby affirm that I have read this report and all facts,
descriptions, values and other information given by me are
true and correct to the best of my knowledge and belief.

```
O  |  ANIMAL LOCATED { }NO {✓}YES  DATE 4-13-07 TIME 1445  OFFICER AM
F  |
F  |  DATE OWNER NOTIFIED 4-13-07  NOTIFIED BY { }MAIL { }HAND {✓}PHONE
I  |
C  |  DATE ANIMAL CONFINED 4-13-07  VETERINARIAN Dr Drake
E  |
   |  CONFINEMENT CONFIRMED BY    Nick    { }VET {✗}EMPLOYEE
   |
   |  PHONE 281-6100  DATE CONFIRMED 4-13-07  RELEASE DATE 4-22-07
   |
   |  ANIMAL SUBMITTED FOR RABIES TESTING? {✗}NO { }YES  DATE_____
   |
   |  LAB RESULTS_____
   |
   |  REPORT FAXED TO H.D. 4-16-07  BY    ky
```

ADDITIONAL REMARKS: that she was riding her bike on the side walk in the 3100 Blk of Brentwood dr. She saw a dog on a chain at 3106 Brentwood dr at the far end of the driveway he was barking. She turned her bike around and started back down the side walk the dog broke the chain and came up to her knocked her off of her bike and started attacking her. McKala walked home to her Grandmother. Mrs Flowers walked back to get McKalis bike she saw a lady and a child coming out of the house of 3106 Brentwood she asked her if she has a big dog she said yes and she looked down the drive way and he was gone. Mrs Flowers stated that the dog came from around the corner of another yard towards

her. Mrs Flowers told her that her dog had attacked Mckayla. McKayla has a deep puncture wounds to her right upper arm. She has a puncture and laceration on both shoulders and a puncture wound on the back of her left thigh.

# MONTGOMERY POLICE DEPARTMENT
## CONFINEMENT OF ANIMALS FOR RABIES OBSERVATION

Ordinance 29-2001 Section 5-39 Quarantine required in instance of bite.

(a) Whenever an Animal Control Officer shall receive information that a humane being or domesticated animal has been bitten or exposed by a dog or cat, the animal control officer shall give written notice to the owner of the dog or cat that the dog or cat must be placed in quarantine under the direct supervision of a licensed veterinarian fo a period of ten (10) days subsequent to the date of the bite or exposure for the purpose of determining whether the dog or cat is infected with rabies. The owner of said dog or cat shall place the animal in quarantine within one (1) business day of the date of notice.

(b) Such quarantine shall be at the expense of the owner of said animal.

(c) ........

(d) An owner may relinquish, in writing, the ownership of such dog or cat to the animal control officer for the purpose of humanly destroying the dog or cat to enable immediate testing to be performed on the animal by the Department of Public Health.

(e) It shall be unlawful for the owner of such dog or cat to refuse to comply with the lawful order of the animal control officer given pursuant to this section. It is unlawful for the owner to sell, give away, transfer to another location or otherwise dispose of any such dog or cat until it is released from quarantine by the veterinarian or other officer duly authorized under state law.

I understand my responsibilities as stated above. My animal will be quarantined at:

The animal Clinic Dr Drake

OWNERS SIGNATURE *Teralu*

OFFICERS SIGNATURE *A M Dcrames 680*

DATE: 4-13-07