IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE PROPERTY AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:07-CV-809-MHT |
| LEO LACAYO and M. F., a minor, by and through her Parent and Next Friend, Vicki Flowers, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**NATIONWIDE'S REPLY TO THE FLOWERS DEFENDANTS'**
**RESPONSE TO NATIONWIDE'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Nationwide Property and Casualty Company (hereinafter "Nationwide"), and files the following Reply to the Flowers Defendants' Response to Nationwide's Motion for Summary Judgment as follows:

**I.      REPLY TO THE FLOWERS DEFENDANTS' "UNDISPUTED FACTS."**

Because the Flowers Defendants have not disputed any of Nationwide's Undisputed Facts, they will be deemed admitted for purposes of this response. Because the Flowers Defendants did not dedicate a section in their brief to a statement of undisputed facts, there are, thus, no disputed facts. However, Nationwide will reply to the exhibits attached to the Flowers Defendants' responsive brief, as well as the additional documents referenced in the brief, beyond that which is referenced in Nationwide's Motion for Summary Judgment.

**A.    Declaration Of Vicki Flowers.**

Attached as Exhibit "1" to the Flowers Defendants' responsive brief is a "declaration" of Vicki Flowers relative to her daughter's injuries and reactions to the dog bite in question. Also attached to the declaration are medical records and bills for treatment allegedly received by her daughter after this incident. Nationwide objects to this purported evidence in that it is irrelevant to the coverage issues pending before this Court and because the declaration, itself, contains improper hearsay. Further, the medical records and documents are also uncertified and subject to a hearsay exclusion. *See* Hicks v. Westborough, 537 So. 2d 486 (Ala. 1988); Alabama Farm Bur. Mut. Cas. Ins. Co. v. Smelley, 329 So. 2d 544 (Ala. 1976); and A.P.J.I. 11.09.

**B.    Flowers' Exhibit "2."**

Nationwide has no objection or response to Exhibit 2 in that it is identical to the Montgomery Police Department Animal Control Bite Report that was referenced in Nationwide's Motion for Summary Judgment.

**C.    Lacayo's "Response to Complaint." [Court Document 16]**

In their responsive brief, the Flowers Defendants make reference to the Response filed by Leo Lacayo in which he stated that "my agent, he assured me that I was fully covered and no worries in this situation." This statement is inadmissible hearsay to which Nationwide strenuously objects. Nationwide further moves to strike this statement as it is characterized in the Flowers Defendants' responsive brief and in Lacayo's Response to the Complaint. Furthermore, for a statement to be admissible it must be affided to. The referenced statement is unaffided. *See* F.R.C. P. 56(e).

## II.    NATIONWIDE POLICY PROVISIONS.[1]

*Section II*

*Liability Coverages*

**ADDITIONAL   DEFINITIONS   APPLICABLE   TO   THESE COVERAGES**

For purposes of these coverages only:

1.    **"BODILY   INJURY"** means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2.    **"PROPERTY DAMAGE"** means physical injury to or destruction of tangible property. This includes its resulting loss of use.

\* \* \*

4.    **"OCCURRENCE"** means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition. The **occurrence** must be during the policy period.

\* \* \*

*Coverage Agreements*

**COVERAGE E – PERSONAL LIABILITY**

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property.

[Nationwide Homeowners Policy, p. G1]

---

[1] Nationwide attached to its Notice of Filing of Evidence in this matter a complete copy of the Nationwide Homeowners Policy issued to Leo Lacayo. Because the Flowers Defendants' responsive brief cites several additional policy provisions, Nationwide is setting out herein the policy provisions required to reply to the Flowers Defendants' contentions.

## COVERAGE F – MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical and funeral expenses incurred within three years after an accident causing **bodily injury**.

\* \* \*

This coverage applies as follows:

1. to a person on the **insured location** with consent of an **insured.**

2. to a person off the **insured location**, if the **bodily injury:**

   a) arises out of a condition in the **insured location**.

   b) is caused by the activities of an **insured**.

   c) is caused by a **residence employee** of an **insured**.

   d) is caused by an animal owned by or in the c are of an **insured**.

### *Additional Liability Coverages*

**We** will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1. **Claims Expenses.** **We** will pay:

   \* \* \*

2. **First Aid Expenses.** **We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others.** **We** will pay for **property damage** to property of others caused by an **insured** regardless of legal liability. **We** will pay up to $1,000 per **occurrence**, but not more than the smallest of the replacement cost or the cost to

4

repair the damaged property. **We** will not pay for **property damage**.

[*Id.*, p. G2]

### *Liability Exclusions*

(Section II)

1.    Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to **bodily injury** or **property damage**:

[*Id.*, p. H1]

o)    caused by any of the following animals owned by or in the care of an **insured**:

    (1)    the following types of pure bred dogs:

        (a)    American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

        (b)    Doberman Pinchers;

        (c)    Rottweilers;

        (d)    Chow Chows; or

        (e)    Presa canaries;

    (2)    wolf hybrids;

    (3)    trained attack or guard dogs;

    (4)    any fighting dog or dog bred for fighting; or

    (5)    any dog with a prior history of:

        (a)    causing **bodily injury** to a person; or

(b)    attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

(6)    any non-licensed dog.

[*Id.*, p. H3]

## III.    LEGAL ARGUMENT.

The Flowers Defendants have stated in their responsive brief that the policy exclusion relied upon by Nationwide is ambiguous. However, no case law is cited to support this contention, and, as will be set out herein, an interpretation of the available case law clearly shows that the Animal Exclusion contained within the Nationwide Homeowners Policy is unambiguous.

### A.    The "First Aid" Provision Cited By The Flowers Defendants Is Inapplicable To The Instant Case.

The Flowers Defendants have argued that the following policy provision found under "Additional Liability Coverages" on p. G2 of the Nationwide Homeowners Policy provides coverage for certain expenses allegedly incurred by the Flowers Defendants. [Court Document 33, p. 2] Specifically, the provision states as follows:

*Additional Liability Coverages*

**We** will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1.    **Claims Expenses. We** will pay:

* * *

2.    **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **insured** for **bodily**

**injury** covered under this policy. **We** will not pay
for first aid to **you** or any other **insured**.

[Nationwide Homeowners Policy, p. G2]

This provision applies only to "first aid" expenses **incurred by an insured.** [*Id.*]

Absent from the Flowers Defendants' brief is any evidence that any amount was incurred

by Nationwide's insured, Lacayo, for "first aid" expenses associated with the incident in

question. "First aid" is defined as: "emergency treatment administered to injured or sick

persons <u>before</u> professional medical care is available." [*American Heritage Dictionary,*

*2nd College Edition*] The hospital care allegedly sought out and paid for by the Flowers

Defendants would not qualify as "first aid" and there is no evidence that the insured,

Lacayo, incurred any expenses for "first aid." As a result, this provision is inapplicable to

the situation at hand. Simply because Vicki Flowers characterized the alleged hospital

treatment (professional medical care) received by her daughter as "first aid," does not

make it so. Moreover, as Lacayo did not pay for these charges, he did not incur them.

The Flowers Defendants also allege that coverage for "damage to property of

others," found within the same section as the first aid expenses, also operates to provide

coverage for ruined clothing and a bicycle pedal. [Court Document 33, p. 2]

Notwithstanding the fact that this is the first such allegation, there is no evidence that the

insured, Leo Lacayo, or anyone else entitled to coverage as an insured under the policy,

caused such alleged property damage.

B.    **The Nationwide Liability Exclusions Apply To Coverage E – Personal
      Liability And Coverage F – Medical Payments To Others.**

The Flowers Defendants have, apparently, misread the policy language

concerning the applicability of liability exclusions. Specifically, the liability exclusions

apply to Coverages E and F. [Nationwide Homeowners Policy, p. H1] Coverage E specifically refers to personal liability coverage for which Nationwide has agreed to "pay damages an insured is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property." [*Id.*, p. G1] Coverage F, which entails medical payments to others, provides for payment of necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. [*Id.*, p. G2] By the clear provisions found under the heading of "Liability Exclusions," the exclusion in question for "bodily injury" or "property damage" "caused by any one of the following animals owned by or in the care of an insured," is applicable to both Coverage E and Coverage F, not just Coverage F (medical payments) as set forth in the Flowers Defendants' brief.

C.    **All Bodily Injury Claims Made By The Flowers Defendants Are Excluded.**

The Flowers Defendants make the rather strained argument that certain aspects of the bodily injury claim are covered pursuant to the Nationwide Policy. They do so by selectively interpreting the policy in an extremely illogical manner, which is unsupported by the unambiguous policy language. Essentially, what they have argued is that certain alleged injuries, which do not fall within the policy's definition of "bodily injury"," are therefore not excluded by the Animal Exclusion. They have completely disregarded the coverage agreement that states it will pay damages an insured is legally obligated to pay due to an "occurrence." [*Id.*, p. C1] The definition of "occurrence" "means bodily injury or property damage resulting from an accident." [*Id.*] Thus, the only damages covered are those that meet the definition of "bodily injury" or "property damage" as described in the policy.

Under Section II – Liability Coverages, there are several important definitions that must be considered in interpreting the relevant policy provisions: "Bodily injury" is defined as "bodily harm, including resulting care, sickness or disease, loss of services or death." [Nationwide Homeowners Policy, p. G1] "Bodily injury does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm." [*Id.*] "Property damage" is defined as "physical injury to or destruction of tangible property. This includes its resulting loss of use." [*Id.*] "Occurrence" is defined as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." [*Id.*]

After the above-referenced definitions, a "coverage agreement" is described within the policy for "personal liability." [*Id.*] The policy clearly states that "we will pay damages an insured is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property." [*Id.*] Because an "occurrence" is defined as "bodily injury or property damage resulting from an accident...," the personal liability coverage applies to bodily injury as defined by the policy and property damage, as defined by the policy resulting from an accident. The exclusions contained under Section II are entitled "Liability Exclusions." [*Id.*, p. H1] Those exclusions do not apply to "bodily injury" or "property damage" resulting from certain activities, which are enumerated under the heading of Liability Exclusions. Those exclusions apply to the personal liability coverage under Coverage E and medical payments to others coverage under Coverage F. The exclusion in question is as follows:

o)    caused by any of the following animals owned by or in the care of an **insured**:

(1)    the following types of pure bred dogs:

(a)    American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

(b)    Doberman Pinchers;

(c)    Rottweilers;

(d)    Chow Chows; or

(e)    Presa canaries;

(2)    wolf hybrids;

(3)    trained attack or guard dogs;

(4)    any fighting dog or dog bred for fighting; or

(5)    any dog with a prior history of:

(a)    causing **bodily injury** to a person; or

(b)    attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

(6)    any non-licensed dog.

[*Id.*, p. H3]

In the instant case, the allegations made by the Flowers Defendants against the insured, Lacayo, arguably constitute an "occurrence" in that they have alleged bodily injury. However, the alleged occurrence is excluded by the express and unambiguous provisions of the insurance policy. Contrary to the unambiguous terms of the policy, the

Flowers Defendants have argued that "the emotional distress, mental anguish, fear and upset that M.F. suffered prior to the dog physically touching her, would not satisfy the policy's definition of bodily injury." [Court Document 33, p. 4] Missing from this "analysis" is a consideration of the fact that while the policy covers certain "occurrences," which are defined as "bodily injury or property damage resulting from an accident," other occurrences are excluded. In other words, the policy provides coverage for occurrences. "Occurrences" are defined as "bodily injury or property damage resulting from an accident." If it is assumed that the incident in question was an "occurrence," the next logical step in analysis of coverage would be to determine whether the damages claimed constituted "bodily injury," as defined in the policy. In this case, the activity complained of is excluded from coverage, thus, the harm or injury complained of by the Flowers Defendants regardless of how it is characterized is not covered.

The Flowers Defendants have argued that the coverage agreement language wherein Nationwide has stated that it "will pay damages an insured is legally obligated to pay due to an "occurrence" resulting from negligent personal acts," is "expansive" and "creates the reasonable expectation that coverage will attach." [Court Document 33, p. 5] Far from being expansive, the coverage agreement limits the coverage to an "occurrence." [Nationwide Homeowners Policy, p. G1] As set forth at length above, an "occurrence" includes what the policy defines as "bodily injury" or "property damage." Thus, the only thing that can be excluded under the exclusions are types of damages that otherwise would be covered. Other categories of damages that the Flowers Defendants may assert and, which do not constitute an occurrence, can't be excluded by the terms of

11

the policy because they were never included by the terms of the policy. In other words, there is no need to exclude that which was not covered in the first place.

In support of their allegation that the expansive language contained under the Section II – Coverage Agreement created an expectation that coverage would attach, the Flowers Defendants have cited Federated Mutual Insurance Co. v. Abston Petroleum, Inc., 967 So. 2d 705 (Ala. 2007). However, that case actually held that an insured's expectations of coverage were not objectively reasonably considering the language contained within the policy. In Abston, the Alabama Supreme Court upheld a Pollution Exclusion contained within a Commercial General Liability Policy finding that the insured's expectations of coverage were not objectively reasonable. The Court in Abston, discussed the "rule (or doctrine) of reasonable expectations:"

> In giving effect to [the rule that the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases], it is equally important that the contract made by the parties shall prevail, and no new contract be interpolated by construction. Provisions clearly disclosing the real intent are not to be given a strained construction to raise doubts where none reasonably exist. No citation of authority need be made in support of these well settled principles.

Id. at 713; (citing from Aetna Casualty & Surety Co. v. Chapman, 200 So. 2d 425, 426-27 (Ala. 1941).

In the instant case, the clear and unambiguous language contained within the Nationwide Policy is due to be given its logical meaning and construction. That is, the policy covers "occurrences." An "occurrence" includes "bodily injury" and "property damage," as defined by the policy. However, even if an injury or claim constitutes an occurrence, it still may be excluded from coverage. In the instant case, that is exactly

12

what has happened. The clear and unambiguous exclusion precludes coverage for the damages complained of by the Flowers Defendants, regardless of how they are characterized. They have cited no case law to support their contention that there is any ambiguity in the Nationwide Policy.

**D.    The Language Contained Within The Section I – Property Exclusions Has No Impact On The Coverage Issues In the Instant Case.**

In a confusing argument, the Flowers Defendants have contended that the language contained within the Property Exclusions, contained under a separate section of the policy, are broader than the language contained in the Liability Exclusions, which are applicable to the incident in question. [Court Document 33, p. 6] While it is acknowledged that some of the language contained in the Property Exclusions differs from that found in the Personal Liability Exclusions, that alone does not produce an ambiguity. Language can be varied, but still have a clear and unambiguous meaning. The Flowers Defendants cite Mega Life & Health Insurance Company v. Pieniozek, 516 F. 3rd 985 (11th Cir. 2008), for the proposition that in determining whether a term is ambiguous, the Court should not just look at isolated sentences in the policy, but should look at it in connection with other provisions of the policy in order to arrive at a proper construction. Id. However, the Flowers Defendants have not asserted any reason or logic for why differences in language contained within the Nationwide Policy create ambiguity. They have argued that because Nationwide used the term "caused by" in the Animal Exclusion, that the exclusion is necessarily narrow. [Court Document 33, pp. 8-9] They attempt to make the rather nonsensical distinction between the terms "caused by" and "arising out of" or "resulting from," in their argument that an ambiguity is created. The Flowers Defendants make the rather novel and unusual argument that the term "caused by"

13

contemplates, as the exclusion trigger, one solitary direct cause, but not "a consequence of any" number of causes. [Court Document 33, p. 9]  It is interesting to note that the Defendants cite no Alabama or Federal case law to support this rather strained argument. As the Court in <u>Mega Life</u> stated, the Court, as a fact finder, should look to the commonly understood meaning of words in attempting to determine if they are ambiguous or unambiguous. <u>Id</u>. In the instant case, there is no evidence that the language contained within the Animal Exclusion in the Nationwide Policy is ambiguous.

**E.    Nationwide Has Not Admitted That Coverage Is Required.**

Although, the Defendants argue that Nationwide has acknowledged that coverage is available to Lacayo, the evidence relied upon is inadmissible hearsay. *See* <u>Fed</u>. <u>R</u>. <u>Evid</u>., Rule 802. Interestingly, the Defendants cite no case law or rule to support this claim. They have argued that this inadmissible hearsay "admission" somehow supports their argument that the policy is ambiguous and that it provides coverage. [Court Document 33, p. 10]

**F.    The Animal Exclusion Operates To Exclude Coverage.**

Based upon the Carolyn Stanley Animal Control Bite Report involving Moses, a dog owned by the Nationwide insured, Leo Lacayo, Moses was involved in at least one incident prior to the M.F. incident, causing bodily injury to a person and which also involved attacking or biting another animal. [Exhibit "2," Montgomery Police Department Animal Control Bite; Exhibit "3," Montgomery Police Department Animal Control Bite Report; Exhibit "4," Affidavit of Carolyn Stanley][2] In fact, as the Affidavit of Carolyn Stanley demonstrates, Moses attacked her and her small dog on July 11, 2006,

---

[2] Exhibits referred to herein were filed in support of Nationwide's Motion for Summary Judgment.

approximately nine months before Moses attacked M. F.   [Exhibit "4," Affidavit of Carolyn Stanley]

The clear and unambiguous language contained in the Nationwide exclusion precludes coverage for the incident involving M. F.

Although, there are no Alabama cases, which specifically construe the provision in question, the Nationwide Policy language contained within the body of the instant exclusion has been upheld by a Federal District Court. Nationwide Mutual Fire Insurance Co. v. Creech, 431 F. Supp. 2d 710 (E.D. Ky. 2006).  In Creech, Anthony and Christy Creech's pet German Shepherd, Jake, attacked their three year old niece, Trinity Adams, during a visit to the Creech residence. Id. at 711. The Creechs, like Leo Lacayo, had a Nationwide Homeowners policy, which contained the same exclusion as is found in the instant case. Id. at 716. Like the policy in Creech, Mr. Lacayo's Nationwide Policy provides coverage for "damages an insured is legally obligated to pay due to an occurrence . . . subject to certain exclusions." [Exhibit "1," Nationwide Homeowners Policy, pp. G1, H1-H3] The Court in Creech construed the same exclusion containing the language: "caused by any of the following animals owned by or in the care of an insured:," but applied a different subsection of that exclusion relative to a "non-licensed" dog.[3] Id. at 716. In Creech, Nationwide argued that the exclusion was clear in that it was undisputed that the dog in question was not licensed. Id. at 717.  In Clark County, Kentucky, where the incident occurred and where the Creechs resided, there was an ordinance, which required that dog licenses were to be renewed each year by way of an annual rabies vaccination. Id. Because the Creechs' dog received his last rabies

_____

[3]In fact, the provision construed in Creech is found immediately below the instant provision. [Nationwide Homeowners Policy, p. H3].

15

vaccination on September 25, 2003, and because the incident out of which the case arose occurred on June 25, 2005, the Creechs' dog was deemed "non-licensed" at the time of the incident. Id. Finding that the dog was clearly not licensed on the date of the incident, the court agreed with Nationwide's argument that the language was unambiguous and that there was, therefore, no coverage under the Homeowners policy in question. Id. at 718. As the court explained, the only reasonable interpretation of the Nationwide Policy, which it described as "clear" and "specific," was that Nationwide would not provide coverage for a non-licensed dog. Id. As a result, there was no coverage for Trinity Adams' injury and Nationwide's Motion for Summary Judgment was granted. Id.

In the instant case, it is undisputed that Moses caused an injury to Carolyn Stanley and her dog on July 8, 2006. [Exhibit "3," Montgomery Police Department Animal Control Bite Report; Exhibit "4," Affidavit of Carolyn Stanley] Further, it is undisputed that on April 13, 2007, Moses injured M. F. [Exhibit "2," Montgomery Police Department Animal Control Bite Report] As a result, the clear language of the Nationwide Policy exclusion works to exclude coverage for the M. F. incident, which is the subject of this declaratory judgment action.

## IV.    CONCLUSION.

As a result of the foregoing, Nationwide's Motion for Summary Judgment is due to be granted. The Flowers Defendants have presented no case law supporting their contention that Animal Exclusion in the Nationwide Policy is ambiguous or unenforceable. As a result of the foregoing, those provisions are due to be enforced and summary judgment is due Nationwide as a matter of law.

Respectfully submitted,

/s/Kori L. Clement
Kori L. Clement, Esquire  (CLEMK5125)
Attorney for Plaintiff, Nationwide Property and
Casualty Company


OF COUNSEL:
HARE, CLEMENT & DUCK, P.C.
505 20th Street North
Suite 1010, Financial Center
Birmingham, Alabama 35203
Telephone: (205) 322-3040
Facsimile:  (205) 322-5577
E-mail: clem@harelaw.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been electronically served upon counsel of record and by placing a copy of same in the United States Mail, properly addressed and postage affixed, to Leo Lacayo, on this the 4th day of April, 2008, as follows:

Mr. Leo Lacayo
3106 Brentwood Drive
Montgomery, Alabama 36111

M. Wayne Sabel, Esquire
Mark Sabel, Esquire
Sabel & Sabel, P.C.
Hillwood Office Center
2800 Zelda Road, Suite 100-5
Montgomery, Alabama 36106


/s/Kori L. Clement
Of Counsel

17